## THE CHICAGO CITY RAILWAY COMPANY
## v.
## ELLEN McLAUGHLIN, EXECUTRIX.

*Master and Servant—Negligence of Servant—Master's Liability—Street Railroads—Practice.*

1.   Where street cars of two different lines have equal rights at a crossing of their tracks, the fact that the hind end of the car upon one of them is struck by the front end of the other while passing over such crossing, of itself and without explanation, raises the presumption that the colliding car was carelessly managed.

2.   Where, in such case, a given car has the crossing, the person in control of an approaching car is bound to so govern the movement thereof, as that whether the first car goes fast or slow, and even if it comes to a dead stop with the rear end still in the cable track, he can stop his car before striking it.

3.   The court should not, in a given case, intimate that a witness has not answered fairly.

4.   An attorney should not be rebuked because he is mistaken as to the admissibility of evidence. The trial court is the best judge as to whether an offer of evidence is made in good faith.

[Opinion filed May 5, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. R. W. CLIFFORD, Judge, presiding.

Mr. WILLIAM J. HYNES, for appellant.

It is good practice to reverse a case for the misconduct of counsel, if it is such in the opinion of a court of review as

may have improperly influenced the result. Meredith v. People, 84 Ill. 480; Tucker v. Henniker, 41 N. H. 318; Cleveland Paper Co. v. Banks, 15 Neb. 20; Brow v. State, 2 Northeastern Rep. 296; Wolffe v. Morris, 74 Ala. 386; East Tenn. & G. R. R. Co. v. Baylis, 75 Ala. 466; East Tenn. & G. R. R. Co. v. Carlos, 77 Ala. 443; B. & O. R. R. Co. v. Boyd, 10 Atlantic Reports, 315; Berry v. State of Georgia, 10 Ga. Rep. 522; The State ex rel. v. Claudius, 1 Mo. App. Rep. 551; Hennies et al. v. Vogel, 87 Ill. 242; Kepperly v. Ramsden, 83 Ill. 354.

Messrs. MURPHY & CUMMINGS and GIBBONS & KAVANAGH, for appellee.

MORAN, P. J.   Appellee's decedent was a driver of a horse car in the employ of the West Chicago Street Railway Company, and was thrown from his car and killed by a collision, which occurred between the car which he was driving and a grip car of appellant.   The cable track running north and south on Wabash avenue crosses at right angles two horse car tracks of the West Division Company, which run east and west on Randolph street.   The car which deceased was driving was going west, and the southeast corner of the said car was struck by the northwest corner of appellant's grip car, which was traveling north.   The rear end of the horse car was knocked off the track and toward the north, and the shock or jerk, produced by the collision, threw appellee's decedent over the dash-board of the car, and the horses taking fright, dragged the derailed car some fifteen or twenty feet, running the trucks over him so that he was killed.

The collision occurred a few minutes before seven o'clock in the morning on September 13, 1888, in the full light of day and when no object was interposed between the grip car and the horse car to obstruct the view of either driver as the cars approached the intersection of the tracks.

There was a verdict and judgment against appellant, and on this appeal various errors are assigned, chief among which is that the jury were not warranted by the evidence in

finding that the appellant's driver in charge of the grip car was guilty of any negligence, and that the collision occurred through the negligence of the driver of the horse car. The rights of the two cars at the crossing were equal, and it is clear that the one which took the crossing first was entitled to pass over it before the other could enter upon it. The fact that the hind end of one car is struck by the front end of the other while passing over such a crossing, of itself, and without explanation, raises the presumption that the colliding car was carelessly managed. But we are not left to presumptions in this case. It seems to us that the facts taken to have been proved, just as appellant insists they were proved, demonstrate that the grip driver was negligent and the collision was due to his negligence, and the verdict, so far as that issue was concerned, could not have been other than it was.

Appellant claims that the grip car could not be run faster at that point than four miles an hour. That is the maximum speed. It may be run slower but not faster. It also claims that the result of all the evidence on the part of appellee is that the horse car moved only at the rate of about two miles an hour from the time it left the east side of Wabash avenue until the instant of the collision. The gripman testifies that he could stop the grip with the brake in about fifteen feet, and that from the time he began to handle the appliances it would take twenty to twenty-five feet till he "got stopped."

The length of the horse car, including platforms, was shown by actual measurement to be twenty-four feet. It seems to us a liberal estimate to allow fourteen feet from the front platform of the car to the front of the horses' heads, but call it sixteen feet, making the length from the rear of the car to the front of the horses' heads forty feet. The width of the cable track is about four feet nine inches, call it five feet. Then from the entering of the horses' heads over the east rail of the cable track the horses and car would have to move forty-five feet to clear the west rail of said track. Moving at the rate of two miles an hour, they would move about eighty-eight

feet per minute. Therefore, it would take a trifle more than half a minute to clear the west cable track. Now, if the grip was traveling at its maximum speed, to wit, four miles an hour, it would move eighty-eight feet in that half minute. If, therefore, the gripman was looking ahead with ordinary care, he must have seen the horses' heads crossing onto his track when he was eighty-eight feet south of the north horse car track. He could bring his car to a full stop by using the brake within a distance of thirty feet, and thus avoid all possibility of colliding with the west bound car.

Any increase in the speed of the horse car or lessening of the speed of the grip car, only makes the case worse for the grip driver. He was bound to see the horses when they entered upon the cable track, and if he did see them, there was no rate of speed shown by the evidence of both or either of the cars that would render it impossible for him to stop the grip before he struck the rear end of the horse car, if he exercised reasonable diligence to do so. If he did not see the horses take the crossing, or having seen did not apply his brake in time, or with sufficient power, then he was negligent. If he undertook to calculate the rate at which the horse car was moving and by that calculation gauged his own speed, he took the risk of all errors in his estimate, nor is he relieved by any sudden and unexpected slackening of the speed of the horse car in going over the track. The horse car had the crossing, and the gripman was bound to so govern the movement of his train as that whether the horse car went fast or slow, and even if it came to a dead stop with the rear end still in the cable track, he could stop before striking it.

The question as to the negligence of appellant's servant, and that negligence causing the collision, is the inevitable conclusion from the evidence in the record. That the death of the driver of the horse car was the natural consequence of such negligence, the jury have found, and their conclusion in that regard we are not warranted by any evidence in this record in disturbing. There is an error complained of, which, if the question of fact was not so clear, might require the reversal of the case.

During the cross-examination of one of appellant's witnesses he was pressed as to whether a statement read to him was a correct report of answer given by him in testifying to the facts of this case on a former occasion, or if, assuming the report to be correct, the statement was true. After the witness had answered several times, always as to the correctness of the report, but not as to the truth of the statement, being asked again, counsel for appellant objected and stated that the witness had answered. The court replied: "I do not think he answered it fairly." The remark of the judge was probably inadvertent, but it was a dangerous remark to be uttered by the court in the presence of the jury. The court could have allowed the question to be repeated as often as he saw fit, but should not have intimated that the witness was not answering fairly. While the statement was error, we can not think that it affected the result of the case.

Complaint is made of the conduct of appellee's counsel on the trial. The specific ground of complaint is, that counsel offered to read the testimony of a certain witness taken before the coroner's jury to show that the witness testified nothing on this trial that contradicted his testimony there. The court ruled against the offer, but it is contended that was not enough, that he should have gone further and at the suggestion of counsel for appellant, have rebuked appellee's counsel for making the offer. It is probably impossible to so control counsel in their remarks and offers as that there shall be nothing unfair in the course of a trial. The offer was incompetent, but we are unable to say that it was not made in good faith, and it would be highly unjust to rebuke an attorney because he is mistaken as to the admissibility of evidence. The trial court must be the best judge as to whether such an offer is made in good faith, or for the improper purpose of influencing the jury by getting before them by statement what the counsel knows they should not hear. The point is one on which, as it is presented in this record, we can not intelligently rule. Other errors assigned do not require discussion.

We deem the judgment right on the facts, and that there is no error in the record which requires its reversal, and it will therefore be affirmed.　　　　*Judgment affirmed.*